571 So.2d 263 (1990)
Francis F. HOOD
v.
MISSISSIPPI DEPARTMENT OF WILDLIFE CONSERVATION.
No. 89-CA-378.
Supreme Court of Mississippi.
November 28, 1990.
*265 Dixon L. Pyles, Sr., Pyles & Tucker, Jackson, for appellant.
Mike C. Moore, Atty. Gen., T. Hunt Cole, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and ROBERTSON and BLASS, JJ.
ROBERTSON, Justice, for the Court:

I.
This case asks that we identify the procedural remedies available to one dismissed from state civil service employment. The discharged employee asserts claims that the state has denied rights secured to him by the constitution and laws of the United States, and by the constitution and laws of this state as well, and the question is whether our statutory civil service appeals process is adequate that he may have asserted those rights. We hold that it was. The January, 1986, Mississippi Employee Appeals Board decision upholding his discharge precludes further litigation of all claims that were or might have been made.

II.
Francis F. Hood was born December 30, 1941. He was first employed by the Mississippi Department of Wildlife Conservation (DWC)[1] on December 6, 1967. His first assignment was as a game warden. After serving a twelve-month probationary period, Hood achieved permanent state service status. In 1972 DWC promoted Hood to supervisor in charge of Copiah, Lincoln, Jefferson and Claiborne Counties.
In February 1985, Hood was indicted in Copiah County on a charge of conspiracy to commit vote fraud, a charge related to his employment only in the sense that he is said to have pursued his illegal conduct on state time. Together with four co-defendants, Hood stood trial, and in May, 1985, a Copiah County jury found him guilty as charged. On June 21, 1985, DWC terminated Hood's employment.[2] Hood appealed his discharge to the Mississippi Employee Appeals Board (EAB), see Miss. Code Ann. § 25-9-131(1) (Supp. 1990). On January 9, 1986, EAB affirmed. See Miss. Code Ann. § 25-9-131(2) (Supp. 1990). Hood did not seek judicial review in the Circuit Court.
Meanwhile, Hood appealed his vote fraud conspiracy conviction, and, because of irregularities in the grand jury proceedings, this Court reversed and ordered the indictment quashed. Hood v. State, 523 So.2d 302 (Miss. 1988). Hood then made a plea bargain, wherein he waived the necessity for a new indictment and entered a plea of nolo contendere to an information charging vote fraud. Miss. Code Ann. § 23-15-753 (Supp. 1988). On April 5, 1988, the Circuit *266 Court accepted the plea, adjudged Hood guilty, and sentenced him to serve six months in the Copiah County Detention Center, but suspended service of the sentence, conditioned upon Hood's good behavior for a period of two years. The Court also ordered that Hood pay a five hundred dollar ($500.00) fine.
Some four and a half months later, on August 24, 1988, Hood requested that DWC reinstate him to his previous employment and position and that the Department make him whole. DWC denied these requests.
On September 21, 1988, Hood commenced the present civil action by filing his complaint in the Chancery Court of Copiah County, Mississippi. He charged that DWC breached its contract of employment with him, first, by firing him without cause, and, second, by refusing to reinstate him. He also charged that DWC violated rights secured to him under state and federal constitutions, and in this latter regard Hood invoked 42 U.S.C. § 1983. He demanded a declaratory judgment, a mandatory injunction, monetary damages and punitive damages.
DWC answered and moved to dismiss for lack of jurisdiction, arguing that Hood's exclusive remedy had been that provided by statute, first to the Employee Appeals Board and thereafter judicial review in the circuit court and ultimately this Court. According to DWC, when Hood suffered denial of his claims at EAB's hands and appealed no further, that ended the matter. On March 16, 1989, the Chancery Court granted DWC's motion and dismissed the action.
Hood now appeals to this Court.

III.
The Chancery Court held it was without subject matter jurisdiction and, on this ground dismissed Hood's complaint, and our first question is whether that Court was correct. A challenge to subject matter jurisdiction is a challenge to the Court's "authority to speak at all," Petters v. Petters, 560 So.2d 722, 723 (Miss. 1990), an authority that turns on "the type of case at issue." Common Cause of Mississippi, Inc. v. Smith, 548 So.2d 412, 414 (Miss. 1989); Riley v. Moreland, 537 So.2d 1348, 1351 (Miss. 1989). In "typing" the case we look to "the nature of the controversy and the relief sought," Johnson v. Hinds County, 524 So.2d 947, 952 (Miss. 1988), and we take as true the well-pleaded allegations of the complaint. American Fidelity Fire Insurance Co. v. Athens Stoveworks, Inc., 481 So.2d 292, 296 (Miss. 1985).
For one thing, Hood states a claim for violation of his federally-secured civil rights and demands relief under the authority of 42 U.S.C. § 1983.[3] This state has authority to adjudge such claims, concurrent with that of the United States. City of Mound Bayou v. Johnson, 562 So.2d 1212, 1219 (Miss. 1990). We have held that our chancery courts in particular *267 may hear Section 1983 claims. Burrell v. Mississippi State Tax Commission, 536 So.2d 848, 863-64 (Miss. 1988); Marx v. Truck Renting & Leasing Association, Inc., 520 So.2d 1333, 1346 (Miss. 1987). It matters not that Hood's complaint does not expressly name Section 1983. McFadden v. State, 542 So.2d 871, 875 (Miss. 1989); Marx, 520 So.2d at 1346. Beyond all of this, his suit for injunction presents a traditional subject of equity jurisdiction. Southern Bus Lines v. Amalgamated Association of Street Electric Railway & Motor Coach Employees, 205 Miss. 354, 374, 38 So.2d 765, 768 (1949); Griffith, Mississippi Chancery Practice §§ 24, 434 et seq. (2d Ed. 1950). All other claims may be heard pendent to these. See, e.g., Tideway Oil Programs, Inc. v. Serio, 431 So.2d 454, 464 (Miss. 1983); Shaw v. Owen Gin Co., 229 Miss. 126, 132-33, 90 So.2d 179, 181 (1956). Accepting that for subject matter jurisdiction purposes we may look only to the well-pleaded allegations of the complaint, and taking those as true, we must hold that the Chancery Court erred when it saw itself without subject matter jurisdiction.

IV.
This hardly ends our inquiry, for just because the Chancery Court had subject matter jurisdiction in the premises does not mean it was this state's only tribunal with such authority. More to the point, our question becomes whether the state statutorily prescribed employee appeals procedure, with its judicial review component, was a vehicle through which Hood might have asserted his various claims and, if so, whether that procedure was Hood's exclusive remedy such that DWC may have before the Chancery Court  and here on appeal  asserted the point defensively and in bar of the action.
The Mississippi Statewide Personnel System statutes consolidated the state's civil service system. Miss. Code Ann. § 25-9-105 (Supp. 1990). This system has been designed to establish a structure and practice of personnel administration that would ensure the fair and efficient use of employees in state service. Miss. Code Ann. § 25-9-101 (Supp. 1990). There is no dispute that prior to his termination, Hood had attained permanent employee status under the civil service system. See Miss. Code Ann. § 25-9-121 (Supp. 1990).
The statute prescribes a remedial process available to state employees aggrieved regarding the terms and conditions of their employment. No employee of any state agency may be dismissed unless there is good cause and after written notice and hearing. Miss. Code Ann. § 25-9-127 (Supp. 1990). Employees affected by adverse decisions may appeal to the Employee Appeals Board (EAB) for de novo hearing, then to circuit court for judicial review on the record, and finally to this Court. Miss. Code Ann. §§ 25-9-131 and 25-9-132 (Supp. 1990). Review by the circuit court is limited to determinations of whether the EAB's actions are supported by substantial evidence, are arbitrary or capricious, or are in violation of some statutory or constitutional right of the employee. Miss. Code Ann. § 25-9-131 (Supp. 1990). Appeal to the circuit court must be within thirty days of the board's decisions and a bond is required, see Miss. Code Ann. § 25-9-131 (Supp. 1990), subsection (3) of which declares the legislative purpose to "replace any existing statutory procedure conflicting in whole or in part... ."
While few cases under this process have reached this Court, we have on a number of occasions considered the analogous municipal civil service system, and these may be examined for guidance. In Scott v. Lowe, 223 Miss. 312, 78 So.2d 452 (1955), a city civil service employee sought judicial review via injunction in chancery court. This Court held that the civil service act provided a plain, speedy, adequate and complete remedy for all the rights which were obtained under the act. Scott, 223 Miss. at 318, 78 So.2d at 454-55. To the point, Scott held the civil service remedy exclusive. Scott, 223 Miss. at 321-22, 78 So.2d at 456. To like effect are City of Jackson v. Thomas, 331 So.2d 926, 927 (Miss. 1976); Tennant v. Finane, 227 Miss. 410, 414-15, 86 So.2d 453, 454 (1956).
*268 Mississippi Forestry Commission v. Piazza, 513 So.2d 1242 (Miss. 1987), addresses the state civil service procedure. Piazza, 513 So.2d at 1246. An employee of the Mississippi Forestry Commission sued in chancery court to enjoin his transfer to another district. Piazza, 513 So.2d at 1243. Reversing the grant of a permanent injunction, this Court held that whether the Forestry Commission could authorize an involuntary transfer was a matter for the State Personnel Board, and its alter ego, the Employee Appeals Board. Piazza, 513 So.2d at 1249. Piazza would seem to preclude all of Hood's claims arising from his discharge. In dictum the Piazza Court implied that the case might be different if the employee alleged some constitutional right or a due process violation in the commission's decision making process, Piazza, 513 So.2d at 1248, a concern the legislature has charged that EAB regard as well. Miss. Code Ann. § 25-9-131(1) (Supp. 1900).
We see no reason why DWC and thereafter the Employee Appeals Board were not wholly competent to consider every claim Hood asserts in the present complaint, including the grounds for his Section 1983 claims. State law provides that civil service employees such as Hood may be discharged only for "inefficiency or other good cause," Miss. Code Ann. § 25-9-127 (Supp. 1990). Federal and state constitutions may afford one such as Hood additional protections in his employment. The remedial process provided such employees necessarily vests the employee's department, agency or institution, and ultimately the EAB, with full authority to hear not only the merits vel non of any charge of inefficiency or other good cause, but also any other matter of fact or law the employee may assert affecting his employment. We take Section 25-9-131(3)'s directive that the appeals procedure there provided "replace any existing statutory procedure" as declaring this the employee's exclusive remedy.
Hood may have presented before DWC and thereafter before the EAB every ground for relief he asserts in the present complaint, including his federal claims.[4] Section 1983 merely serves as a method for asserting claims of violation of constitutional rights, the act containing no substantive provisions in and of itself. Chapman v. Houston Welfare Rights Organization, 441 U.S. at 618, 99 S.Ct. at 1916; Estate of Himelstein v. City of Fort Wayne, Indiana, 898 F.2d 573, 575 (7th Cir.1990); Trigg v. Fort Wayne Community Schools, 766 F.2d 299, 300 (7th Cir.1985). The more relaxed administrative appellate process before EAB is quite conducive to a full airing of the employee's constitutional claims. On judicial review the circuit court is specifically charged to consider whether EAB's action abridged "some ... constitutional right of the employee." Miss. Code Ann. § 25-9-132 (Supp. 1990). On final review, the employee's administrative remedies thus exhausted, he may before the Circuit Court pursue all avenues of relief Section 1983 makes available. See Presnell v. Pell, 298 N.C. 715, 260 S.E.2d 611 (1979), and particularly Johnston v. Gaston County, 323 S.E.2d 381 (N.C. App. 1984). Such claims are within this Court's competence.
If an aggrieved state employee were allowed to bring his Section 1983 claim in chancery court after exhausting his administrative remedies and judicial review thereof, we would be sanctioning a duplication of process. Because every claim Hood asserts was available to him before the Employee Appeals Board  and before the Circuit Court thereafter, had he chosen that route, we hold Hood's remedy at law plain, speedy, adequate and complete. Because that remedy has been exhausted, Hood's claim is barred under elementary notions of res judicata.[5]DeFoe v. *269 Great Southern National Bank, N.A., 547 So.2d 786, 788 (Miss. 1989); Riley v. Moreland, 537 So.2d 1348, 1354 (Miss. 1989); Federated Department Stores, Inc. v. Moitie, 452 U.S. 394, 398-402, 101 S.Ct. 2424, 2427-29, 69 L.Ed.2d 103, 108-111 (1981).
Piazza's dictum is not to the contrary. Nothing in the statutes, Miss. Code Ann. §§ 25-9-127, et seq., nor their application in this case offends any constitutional right Hood may have enjoyed. Nothing in the process Hood was in fact afforded abridges any such right. Section 25-9-132(2)(c) mandated that the circuit court consider whether Hood's discharge was contrary to "some ... constitutional right" by law vested in him, substantive or procedural, but Hood chose not to pursue that route.

V.
Notwithstanding, Hood says his case presents a special procedural circumstance and argues we should carve an exception for him. He acknowledges his failure to appeal to the Circuit Court from the January 9, 1986, adverse decision of the Employees Appeal Board. He says that such an appeal at that time would have been a vain and futile act, for the self-same Circuit Court had just convicted him of conspiracy to commit vote fraud[6] and, according to Hood, that Court would surely have continued to rule adversely to him. There are several problems with the argument.
First, we do not consider that the finality of the EAB decision is impugned by the seeming futility of a further appeal to the Circuit Court. Many would-be appellants face such a plight, but this does not mean they may eschew timely pursuit of appellate remedies in hopes of more favorable winds in the future. Moreover, Hood does not follow the argument far enough. However bleak Hood's prospects in the Circuit Court, this Court reversed his criminal conviction, albeit not on the merits, and it is certainly possible that had Hood pursued judicial review of his administrative remedies he could ultimately have found favor in this Court. He chose not to do so and points to no consideration cognizable in law that suggests he should not be bound by his choice. Federated Department Stores, Inc. v. Moitie, 452 U.S. 394, 399-400, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103, 109-110 (1981); Reed v. Allen, 286 U.S. 191, 198, 52 S.Ct. 532, 76 L.Ed. 1054 (1932). Hood claims this Court's reversal of his criminal conviction makes important evidence available to him now, that he did not know of (and could not have known of) before the time ran on his right to seek judicial review. Hood's deadline for seeking judicial review was a function of the positive provisions of Section 25-9-132(1) and not of the ripeness of his proof. This is hardly the only setting in which the law's time limits so strike a litigant. See Reich v. Jesco, Inc., 526 So.2d 550 (Miss. 1988).
Assuming his conviction of conspiracy to commit vote fraud was the reason for his discharge in the first place, Hood points to nothing suggesting that our reversal of his criminal conviction would inexorably have led to his reinstatement with DWC. Hood's criminal conviction performed but an evidentiary function for the Employees Appeal Board. The underlying fraudulent conduct was the true grounds upon which DWC discharged Hood. The criminal conviction served only to establish at the time that those grounds existed. The fact that the criminal conviction may have been reversed does not per se require reinstatement for the reason that the burden of proof in a criminal prosecution is much higher than that in an employment termination proceeding. At a criminal trial the prosecution must prove the accused *270 guilty beyond a reasonable doubt. No such strictures apply before the Employees Appeal Board. Cf. Moore v. Ruth, 556 So.2d 1059, 1061 (Miss. 1990).
Third, even if we assume that Hood's case may have presented a special circumstance upon this Court's reversal of his conspiracy conviction, that circumstance evaporated on April 5, 1988, when the Circuit Court adjudged Hood guilty of vote fraud anew. See Miss. Code Ann. § 23-15-753 (Supp. 1988). On remand, Hood entered a plea of nolo contendere to an information charging vote fraud, whereupon the Circuit Court adjudged him guilty of vote fraud and sentenced him to six months incarceration, albeit the sentence was suspended for a period of two years pending his good behavior. The Court also fined Hood $500.00. This sentence was certainly lesser than the sentence the Court had originally handed down, but the judgment of conviction performs the same evidentiary function as before.

VI.
Hood finally claims that he is not so much complaining of his discharge but that DWC refused to re-employ him. He again predicates everything upon this Court's reversal of his original criminal conviction. As just noted, this fact becomes of no consequence in view of the Circuit Court's April, 1988 (re)adjudication that Hood was guilty of vote fraud. To the point, each ground upon which he demands reinstatement either was asserted by him before EAB in opposition to discharge or was then available to him. To allow Hood to sue for reinstatement in this setting would undermine the integrity of the employee appeals process and must be denied for the same reasons as we gave in Piazza, Scott, and the other cases cited above.
We hold that Hood's termination from employment with DWC became final, effective February 9, 1986, when he failed to perfect an appeal to the Circuit Court of Copiah County from the adverse decision of the Employees Appeal Board. In 1988 when he asked that DWC reinstate him Hood stood in the position of any new applicant for employment.[7] The circumstances which led to his original termination had not changed appreciably. Nothing said here suggests what we should decide in the event of a similar case but where upon appeal one such as Hood should receive a reversal and discharge on the merits of his crimial charge, for that case is simply not before us.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
NOTES
[1] At the time the department was known as the State Game and Fish Commission. For convenience we refer to it as DWC throughout. See Miss. Code Ann. §§ 49-1-1, et seq. (Supp. 1990).
[2] DWC cited the following as the reason for Hood's termination:

Third Group Offense: (i)
Criminal convictions for felonies or other acts of conduct occurring on or off the job which are plainly related to job performance or of such nature that to continue the employee in the assigned position could constitute negligence in regard to the agency's duties to the public or to other state employees.... Third Group Offense: (j)
Engaging in prohibited political activity.
[3] Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress... .
42 U.S.C. § 1983 (1976).
Generally, to establish a claim under § 1983, a potential plaintiff must show two elements: a deprivation of rights secured by the Constitution or federal law and action under color of state law. Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 155, 98 S.Ct. 1729, 1732, 56 L.Ed.2d 185 (1978); Hatteras v. Southwestern Bell Telephone Co., 774 F.2d 1341, 1343 (5th Cir.1985); Douthit v. Jones, 619 F.2d 527, 532 (5th Cir.1980). However, Section 1983 by itself does not protect anyone against anything and one can not go into court claiming "a violation of § 1983". Chapman v. Houston Welfare Rights Organization, 441 U.S. 600, 617, 99 S.Ct. 1905, 1916, 60 L.Ed.2d 508 (1979). Instead, Section 1983 actions must be based upon the rights otherwise federally secured to the plaintiff. Chapman, 441 U.S. at 617-18, 99 S.Ct. at 1915-16. Termination from public employment may give rise to a right of action for the deprivation of constitutionally protected interests. Board of Regents v. Roth, 408 U.S. 564, 576-77, 92 S.Ct. 2701, 2708-09, 33 L.Ed.2d 548 (1971); Perry v. Sindermann, 408 U.S. 593, 602-03, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1971).
[4] Of course, the administrative agencies (DWC and EAB) have no authority to order the plethora of relief available in judicial proceedings involving Section 1983.
[5] In Mississippi Employment Security Commission v. Philadelphia Municipal Separate School District of Neshoba County, 437 So.2d 388 (Miss. 1983), this Court held that the doctrine of collateral estoppel applied to administrative proceedings. MESC, 437 So.2d at 396. This doctrine is essentially a subsidiary of the doctine of res judicata. City of Jackson v. Holliday, 246 Miss. 412, 419, 149 So.2d 525 (1963). Absent statute to the contrary, a chancery court is precluded by either doctrine once an administrative agency, acting in a fact-finding capacity, enters its ruling. As such, the chancery court is precluded from entertaining the claim Hood now asserts.
[6] The question whether Hood's commission of the offenses of vote fraud or conspiracy to commit vote fraud constitute "good cause," Miss. Code Ann. § 25-9-127 (Supp. 1990), and thus grounds for discharge is not before us. That question was available for judicial review only had Hood pursued his remedies back in January of 1986. Miss. Code Ann. § 25-9-132 (Supp. 1990).
[7] We do not consider whether there is anything in the statute that would have prevented Hood from returning to the administrative procedures once his conviction was overturned for another hearing in light of that fact. Such an alternative would be analogous to relief from judgment rules that allow a party to obtain relief once a prior judgment which a latter judgment is based upon has been reversed. Miss.R.Civ.P. 60(b)(5). As such, Hood could not allege inadequacy of post-termination remedies when they were skipped. Myrick v. City of Dallas, 810 F.2d 1382, 1388 (5th Cir.1987).