458 So.2d 1066 (1984)
FARRISH GRAVEL COMPANY, INC. and Phillips Contracting Company, Inc.
v.
MISSISSIPPI STATE HIGHWAY COMMISSION.
No. 54364.
Supreme Court of Mississippi.
November 7, 1984.
Rehearing Denied November 28, 1984.
*1067 Vardaman S. Dunn, Cox & Dunn, Jackson, for appellants.
James W. Nobles, Jr., Bill Allain, Atty. Gen., P.O. Gibson, Jr., Asst. Atty. Gen., Walter E. Wood, Clinton A. Davis, Jr., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and ROBERTSON, JJ.
ROY NOBLE LEE, Presiding Justice, for the Court:
Farrish Gravel Company, Inc. (Farrish) and Phillips Contracting Company, Inc. (Phillips) filed suit in the First Judicial District of Hinds County, against the Mississippi State Highway Commission [Commission] seeking money judgments for adjustments in highway contracts and seeking to enjoin the Commission from restricting the price adjustment program under highway contracts to the time period prior to the beginning of overtime on the respective projects. The cases were consolidated for trial, the chancellor found against both Farrish and Phillips and dismissed the complaints. Farrish and Phillips appeal here and assign three (3) errors in the trial below.
The central issue in this case involves the interpretation and applicability of Laws of 1975, Chapter 470 [an amendment to Mississippi Code Annotated § 31-7-39 (1972)] to contracts between the Commission and road contractors. The relevant part of the amendment follows:
Provided further, any public authority authorized to enter into contracts for the construction, maintenance, surfacing or repair of highways, roads or streets, including any department or agency of the State of Mississippi and its political subdivisions, may include in its bid proposal and contract documents a price adjustment clause with relation to the cost to the contractor, including taxes, based upon an industry wide cost index, of petroleum products including asphalt used in the performance or execution of the contract or in the production or manufacture of materials for use in such performance; such industry wide cost index to be established and published monthly by the State Highway Department with a copy thereof to be mailed to the clerks of the governing authority of each municipality and the clerks of each board of supervisors throughout the state. The price adjustment clause shall be based on such cost of said petroleum products only and shall not include any additional profit or overhead as part of the adjustment. The bid proposals or document contract shall contain the basis and methods of adjusting unit prices for the change in such cost of said petroleum products.
After enactment of the amendment, the Commission adopted a price adjustment program and contracts stated in detail the basis and method of adjusting unit prices for changes in the cost of petroleum products necessarily consumed in the road building. The bid proposals and contracts prepared by personnel of the Mississippi State Highway Department provided for a price adjustment clause "based upon an industry-wide cost index, of petroleum products including asphalt used in the performance or execution of the contract." The personnel of the Mississippi State Highway Department inserted a restrictive paragraph in the special contract provision which follows:
Adjustments herein provided shall not apply to fuels consumed or materials incorporated into the work during any monthly estimate period falling wholly after the expiration of contract time as determined by checked final quantities.
The appellants contend that use of the quoted restrictive paragraph is not within the authority conferred by the Legislature, and its use violates the intent of the Legislature as well as the letter of the law, and creates a second penalty on top of liquidated damages. Further, that the Commission never intended to restrict the price adjustment allowance to eliminate periods *1068 of performance in overtime and, when the attention of the Commission was called to the restrictive paragraph in the contract documents, the same was eliminated and stricken from the contract documents in May, 1980. In the alternative, appellants argue, if they are mistaken, then the restriction should be construed to exclude only increases in the price of petroleum products above the price prevailing on the date that the contract time allowance for completion expired, free of liquidated damages.
The Commission vigorously defends its position that the chancellor correctly decided the questions in dismissing appellant's bills of complaint and strongly argue that the decree entered in the lower court should be affirmed.
On May 5, 1980, the restrictive provision was removed from contract by order of the Commission and was intended by the Commissioners to apply both in the future and to those contracts which already contained the provision. On April 28, 1981, the Commission adopted a new provision, viz, "After the expiration of contract time, including all authorized extensions, adjustments will be computed using fuel and material prices that are in effect at the expiration of contract time." On that date, Farrish and Phillips filed their suits for $648,659.39, and $120,249.96, respectively.

I.

THE RESTRICTIVE PARAGRAPH WAS UNAUTHORIZED BY THE ENABLING STATUTE AND IS INVALID AND UNENFORCEABLE.
Appellants contend that the Mississippi State Highway Commission was not required by statute to include the petroleum adjustment in its contracts and, since the Commission made the decision to do so, the petroleum adjustment could not be limited just to the work done during the contract period. The Commission contends that the determination of how to implement the petroleum adjustment clause was a function within the policy-making powers of the Commission. We recognize that government agencies have only such powers that are expressly granted to them, or necessarily implied in their grant of authority. Any acts which are not so authorized are void. Strong v. Bostick, 420 So.2d 1356 (Miss. 1982); Golding v. Salter, 234 Miss. 567, 107 So.2d 348 (1958).
We have not been cited cases by the parties dealing with the petroleum adjustment clause and the Commission's implementation of it. In his opinion, the chancellor said:
The Highway Department had written the provision into the fuel adjustment portion or provisions of its contracts without any stated authority in the minutes of the Commission a clause which provided that the fuel adjustment provisions would not be applicable to the period of time falling after the stated completion date of the contract. In the case at bar, as I understand the evidence, the price of fuels continued to go up after the date of the bid letting or the acceptance by the Highway Department, and these that are involved here went into overtime or past the contract due date. The provision in the contract had provided that there would be no price escalation or des-escalation [sic] up or down on the fuels for the period beyond the date specified for the completion of the contract. These claims were for the period of time which did go past completion dates. The testimony was, then, that the clause eliminating the fuel adjustment for the period of time falling past the contract date was eliminated itself from the Highway Department contracts, again without any written minutes authorizing that. Later, the fuel adjustment clause was, to a modified extent, put back in, pegging the price of fuels as of the time that the contract expired or the time for completion of the contract expired, no matter how long it took to complete it thereafter.
It is the opinion of the Court that the Highway Department had the right to put the clause which eliminated fuel escalation for the period after the contract *1069 completion date into the contracts as being under the permissive authority granted by the Legislature in I believe the '75 Act. The Court is not saying it thinks that was a wise decision. I don't know that it is required to be wise or that everybody agrees that it is. I have not really understood the objection to the Highway Department, that the Highway Department has had, to the fuel escalation clause as anything other than really what amounts to a further penalty, but then I think they had the right to do it. If the fuel escalation clause is not properly drawn, then it ought to be redrawn, the whole fuel escalation, so as to do what was intended, and that was simply to vary the price of the contract to fit the currect [sic] price of fuel. That way, I certainly agree with Mr. Dunn that it was not designed to be a profit or loss of profit in that sense, but it was within the scope of authority, I think, of the Highway Commission to do. It was put into the contracts. The contracts were examined. Pre-letting sessions were held in which no one protested that. All of the contractors knew or should have known what the provisions were. They all accepted that, and as Mr. Dunn pointed out, the price could have gone down as well as up, and if it had gone down, then the Highway Department would in the view of this Court have been required to take that into just as much consideration as they would if the price went up, since it was a contractual part of the contract.
Appellants cite Broadhead v. State Tax Commission, 238 Miss. 239, 117 So.2d 881 (1960), for the proposition that the determination of the amount of a penalty cannot be delegated to an administrative agency. However, Broadhead involved the authority of the Tax Commission to levy a penalty ranging from ten percent (10%) to twenty-five percent (25%) for the failure to pay income taxes. The petroleum adjustment restriction is not a penalty and the present case involves contracts not violation of the income tax statute. Broadhead is not authority for the proposition here.
Witnesses for appellants, principally contractors, were frank to state that, if they felt they could not complete a job on time, they would not bid on it.
We are of the opinion that there is no merit in this assignment.

II.

THE PENALTY OF THE RESTRICTIVE PARAGRAPH, IF NOT VOID, WAS REPEALED RETROACTIVELY.
The facts of this case are practically undisputed. On May 5, 1980, the Commissioners attempted to delete the restriction from the contracts. On April 28, 1981, they attempted to modify the provision so that the petroleum adjustment would be paid, but only at the rate set on the completion date. Appellee argues that the Commissioners had no authority to make such a substantial change in the contract once construction had begun.
Section 96, Miss. Const. 1890, states:
The Legislature shall never grant extra compensation, fee, or allowance, to any public officer, agent, servant, or contractor, after service rendered or contract made, nor authorize payment, or part payment, of any claim under any contract not authorized by law; but appropriations may be made for expenditures in repelling invasion, preventing or suppressing insurrections.
The above section is controlling on the Legislature and any state agency created by the Legislature. In Clark v. Miller, 142 Miss. 123, 105 So. 502 (1925), contractors had agreed to build a levee but with increased price of labor and materials due to World War I, they claimed it would be difficult to complete. They agreed to work as long as possible, but stated it would eventually bankrupt them. Thereupon, the Levee Board agreed to pay extra compensation to complete the project. Although the Court sympathized with the contractor, such action was held to be a violation of Section 96, Miss. Const. 1890.
*1070 If such change in the contract were permitted, it would be contrary to the purpose of competitive bidding. All the parties had access to the contracts before making their bids. The appellants admitted that they either knew about the restrictive clause or would have known had they read that part of the contract. All bidders based their bid on the original proposal. If the contract were changed subsequent to the bidding so that Farrish and Phillips would receive the large amounts sued for in this case, such would be unfair and discriminatory to the other bidders, who considered that restrictive provision. If such were permitted, government officials could grant substantial benefits to favored contractors. If the contractors knew in advance that they could obtain modifications of the contract to their benefit, they would have a clear advantage over other competitors.
We are of the opinion that there is no merit in Assignment II.

III.

THE RESTRICTIVE CLAUSE WAS NOT VOLUNTARILY INCLUDED BY THE CONTRACTORS.
Appellants argue that they did not voluntarily enter into the contracts, reasoning that the Mississippi State Highway Commission prepares the project specifications and the contract; the contract and the specifications are not open to negotiations; they are in the business of constructing roads in Mississippi; their main customer is the State and they must, therefore, bid on the projects as the State sets forth, or go out of business.
The simple answer to such argument is that no one forced the appellants to go into business. When the State opens a project for bids, a contractor decides what the project is worth. If he cannot make money on it, he does not have to bid on it and good business judgment would dictate that he not enter a bid. If none of the contractors bid, the State of Mississippi must take such action as is necessary to obtain bids, or stop building roads. The reasoning on this point is not sound, and we reject it.
While sympathy may be extended to the contractors who lost large sums of money in failing to perform those contracts, the blame must fall upon them. Apparently, before submitting their bids neither these contractors nor any other contractors contacted or approached the Commission about modifying the restrictive provision. Only after the contracts had overrun and the contractors had incurred losses did they approach the Commission for help. The time was too late. Action should have been taken before the bids were submitted. If the courts should sustain the position of the appellants, then there would be a new day in Mississippi contract law and chaos in the interpretation and enforcement of contracts.
The decree of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER, P.J., and BOWLING, HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.